# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Kenneth H. Adley, | : | |
| | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 2331 C.D. 2014 |
| | : | |
| Unemployment Compensation Board | : | Submitted: June 12, 2015 |
| of Review, | : | |
| | : | |
| Respondent | : | |


BEFORE:　　HONORABLE BONNIE BRIGANCE LEADBETTER, Judge
　　　　　　　HONORABLE RENÉE COHN JUBELIRER, Judge
　　　　　　　HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE COHN JUBELIRER**　　　　　　　　　　**FILED: July 31, 2015**

　　　　Kenneth H. Adley (Claimant), pro se, petitions for review of the Order of the Unemployment Compensation (UC) Board of Review (Board) that found Claimant ineligible for UC benefits under Section 402(b) of the UC Law[1] because he did not have cause of a necessitous and compelling nature to voluntarily quit his position with AIMCO (Employer). On appeal, Claimant argues, *inter alia*, that the Board erred in relying on the reasons set forth in Claimant's resignation letter to conclude

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. § 802(b) (providing, in relevant part, that an employee is ineligible for UC benefits for any week the employee's "unemployment is due to voluntarily leaving work without cause of a necessitous and compelling nature").

that Claimant did not have cause of a necessitous and compelling nature to voluntarily leave his position and that the Board's conclusion is contrary to the record evidence. Discerning no error, we affirm.

Claimant resides in Harrisburg, but he commuted daily by train to Philadelphia where he worked as a full-time leasing consultant for Employer. (Board Findings of Fact (FOF) ¶¶ 1-2.) Claimant voluntarily quit his position on January 31, 2014, citing, in his resignation letter, the death of his mother, his desire to spend more time with his family, and his wish to return to school. (FOF ¶ 5.) Claimant filed an application for UC benefits, asserting that he quit his employment because his daily commute had become too expensive and too painful due to a knee condition that he had developed after accepting his full-time position with Employer. (Internet Initial Claims Form, R. Item 2; Claimant Questionnaire, R. Item 4.) The local UC Service Center denied Claimant's application for UC benefits. (Notice of Determination, R. Item 5.)

Claimant appealed and a hearing was held before a UC Referee (Referee), at which Claimant was represented by legal counsel. Claimant testified that, after taking a leave of absence under the Family and Medical Leave Act[2] (FMLA) to care for his terminally ill mother, he came to the conclusion that he could not return to work because his two hour commute had become too expensive and, more importantly, very painful due to tendonitis in his knees, which developed after he accepted a permanent, full-time position with Employer. (Hr'g Tr. at 6, 9, 17-18, R. Item 13.) Claimant indicated that he had missed work because of

---

[2] 29 U.S.C. §§ 2601-2654.

2

physical therapy for his knees, of which Employer was aware. (Hr'g Tr. at 10.) Claimant testified that he requested certain accommodations from Employer to "get [him] off of the train one or two nights," such as the use of a hospitality suite for one night a week, but none were provided. (Hr'g Tr. at 13-14.) Claimant acknowledged that the reasons he gave to Employer were that: he had just lost his mother, he wanted to spend more time with his family, and he wanted to enroll in a MBA/business school program. (Hr'g Tr. at 6.) Claimant also offered the testimony of his former supervisor (Supervisor), who stated that Claimant had informed him of his knee problems and he was aware that Claimant had requested accommodations from Employer. (Hr'g Tr. at 22-23.)

Employer offered the testimony of one of its Community Managers (Manager). Manager indicated that Claimant's resignation letter did not mention Claimant's knee problems and that continuing work was available for Claimant had he not resigned. (Hr'g Tr. at 26.) Manager testified that she was unaware of any concerns regarding Claimant's physical condition or Claimant's attempts to obtain a hospitality suite or other accommodation for his physical problems. (Hr'g Tr. at 26-27.) Manager stated that Claimant did not provide Employer with an opportunity to remedy the situation prior to his resignation. (Hr'g Tr. at 26.) Employer stipulated that it was aware of Claimant's knee problems in 2013, but noted that this issue was not given in Claimant's resignation letter as a reason for quitting his employment. (Hr'g Tr. at 21.)

The Referee concluded that Claimant did not prove that he had cause of a necessitous and compelling nature to quit his position and affirmed the Notice of

3

Determination. Claimant appealed to the Board. Upon review, the Board made the following findings of fact.

1. The claimant was last employed as a full-time leasing consultant by [Employer] from July 2012 at a final rate of $16.50 per hour and his last day of work was December 4, 2013.

2. The claimant lived in Harrisburg and commuted to his work location in Philadelphia by train.

3. On December 4, 2013, the claimant requested and received a period of Family and Medical Leave (FMLA) to provide care for his terminally ill mother.

4. The claimant was expected to return to work on January 5, 2014, but requested, and received, an extension of FMLA.

5. On January 31, 2014[,] the claimant submitted his resignation to the employer citing the loss of his mother, spending more time with his family and his desire to return to school.

(FOF ¶¶ 1-5.) The Board held that, although quitting one's employment for health reasons may constitute necessitous and compelling cause, Claimant did not meet his burden of proof because: (1) he did not inform Employer that was a reason for his resignation; and (2) he "did not provide the employer with an opportunity to address or accommodate the claimant's health concerns prior to quitting." (Board Decision at 2.) Furthermore, the Board concluded that the reasons set forth in Claimant's resignation letter also did not qualify as necessitous and compelling reasons under the UC Law to justify Claimant voluntarily quitting his employment. (Board Decision at 2.) Accordingly, the Board found Claimant ineligible for UC

4

benefits and affirmed the Referee's Decision. (Board Order.) Claimant now petitions this Court for review.[3]

Claimant argues that, in finding him ineligible for UC benefits, the Board erred in giving undue weight to the resignation letter in light of the substantial evidence that Claimant quit due to the painful effect his commute was having on his knee condition. Claimant further asserts that the Board's rationale is contrary to the record evidence and that Employer could not have made any accommodations to ease his commuting problems.[4]

Under Section 402(b) of the UC Law, "[w]here a claimant has voluntarily quit employment, in order to obtain benefits, [he] must show that [he] left [his] employment for necessitous and compelling reasons." Collier Stone Company v.

---

[3] "The Court's review is limited to determining whether constitutional rights were violated, whether an error of law was committed, whether a practice or procedure of the Board was not followed or whether the findings of fact are supported by substantial evidence in the record." Western and Southern Life Insurance Company v. Unemployment Compensation Board of Review, 913 A.2d 331, 334 n.2 (Pa. Cmwlth. 2006). The Board's findings of fact are conclusive on appeal if they are supported by substantial evidence, Chapman v. Unemployment Compensation Board of Review, 20 A.3d 603, 607 (Pa. Cmwlth. 2011), which is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'" Peak v. Unemployment Compensation Board of Review, 501 A.2d 1383, 1387 (Pa. 1985) (quoting Murphy v. Department of Public Welfare, 480 A.2d 382, 386 (Pa. Cmwlth. 1984)).

[4] Claimant also challenges several of the Referee's findings of fact and legal conclusions; however, because the Board made its own findings of fact, it is the Board's determination that we are reviewing on appeal. First Federal Savings Bank v. Unemployment Compensation Board of Review, 957 A.2d 811, 815 (Pa. Cmwlth. 2008). Therefore, we will not address Claimant's challenges to the Referee's Decision.

5

Unemployment Compensation Board of Review, 876 A.2d 481, 484 (Pa. Cmwlth. 2005). It is well established that:

> [a]n employee who claims to have left employment for a necessitous and compelling reason must prove that: (1) circumstances existed which produced real and substantial pressure to terminate employment; (2) such circumstances would compel a reasonable person to act in the same manner; (3) the claimant acted with ordinary common sense; and, (4) the claimant made a reasonable effort to preserve h[is] employment.

Brunswick Hotel & Conference Center, LLC v. Unemployment Compensation Board of Review, 906 A.2d 657, 660 (Pa. Cmwlth. 2006). "Whether a claimant had cause of a necessitous and compelling nature to quit a job is a conclusion of law subject to review by this Court." Warwick v. Unemployment Compensation Board of Review, 700 A.2d 594, 596 (Pa. Cmwlth. 1997).

"Medical problems can constitute cause of a necessitous and compelling nature." Wheelock Hatchery, Inc. v. Unemployment Compensation Board of Review, 648 A.2d 103, 107 (Pa. Cmwlth. 1994).

> To establish health as a compelling reason for quitting a job a claimant must: (1) offer competent testimony that adequate health reasons existed to justify termination; (2) have informed the employer of the health problem; and (3) be available, where a reasonable accommodation is made by the employer, for work which is not inimical to his health.

Ridley School District v. Unemployment Compensation Board of Review, 637 A.2d 749, 752 (Pa. Cmwlth. 1994). "[O]nce the employee 'has communicated his medical problem to the employer and explained his inability to perform the regularly assigned duties, an employee can do no more.'. . . It is then up to the

employer to decide whether to make a reasonable accommodation to the employee's needs." Wheelock Hatchery, Inc., 648 A.2d at 107 (quoting Genetin v. Unemployment Compensation Board of Review, 451 A.2d 1353, 1356 (Pa. 1982)).

Claimant is correct that much of the evidence in the record supports the conclusion that he quit his employment due to the effect Claimant's daily commute was having on his knees. In fact, the Board, in its Decision, analyzed Claimant's appeal as though this was the reason Claimant quit his employment. (Board Decision at 2.) However, after its review of the record, the Board concluded that Claimant was not eligible for UC benefits because Claimant did not *inform* Employer that this was the reason why he was quitting, thereby preventing Employer from making any accommodations for Claimant. (Board Decision at 2.) The Board then separately analyzed the reasons given in the resignation letter and concluded that those reasons also did not provide Claimant cause of a necessitous and compelling nature to leave his position.[5] (Board Decision at 2.) Thus, we do not agree with Claimant's contention that the Board gave undue weight to the resignation letter to find him ineligible for UC benefits.

Furthermore, our review of the record evidence reveals that it supports the Board's Decision finding Claimant ineligible for UC benefits. Although Claimant testified that he quit because of his knee problems, he acknowledged that his resignation letter made no reference to his knee issues or otherwise expressed the need for accommodations related to those issues before he quit. (Hr'g Tr. at 17,

---

[5] Claimant does not assert to this Court that the reasons set forth in his resignation letter, alone, satisfied his burden of proof under Section 402(b) of the UC Law.

19, 24.) Instead, Claimant explained that he wanted to let Employer know, through his resignation letter, that:

> I mean basically, obviously at that point in time, my mom had just passed away literally two weeks ago, so again, I was just basically letting them know that I wasn't returning . . . . I think I mentioned about family and school and basically, those things were important at that point in time.

(Hr'g Tr. at 17.) Such testimony supports the Board's determination that Claimant did not inform Employer that he was quitting due to health issues.

Moreover, although Supervisor testified that he knew of Claimant's knee problems and Employer stipulated that it was aware that Claimant had knee problems, these facts do not require a different result. Employer may have been aware that Claimant had experienced knee issues because he had missed several days of work to receive physical therapy, but this does not mean that Employer knew that Claimant was quitting his job due to those issues.

Finally, while Claimant may have requested accommodations in the past, the record is not clear that Claimant advised the supervisors capable of providing accommodations that he was seeking those accommodations due to a medical problem. The email in which Claimant directly requested an accommodation to his higher-level supervisor did not mention his knee issues, but simply stated that Claimant had hoped Employer would consider "the possibility of [Claimant] staying in one [of] the Sterling hospitality suites a couple of nights a week, especially when we open early the next day." (Hr'g Tr. at 13, Ex. C-2.) Manager testified that she was unaware of any problems with Claimant's physical condition

8

or any request for a hospitality suite, and that Claimant did not give Employer a chance to remedy the situation prior to his quitting. (Hr'g Tr. at 26-27.)

Additionally, although Claimant asserts on appeal that Employer could not make any accommodations to meet his needs, Claimant testified that he had hoped that Employer would make some kind of counter offer or accommodation in response to his resignation letter. (Hr'g Tr. at 17.) Had Claimant included a medical reason for his quitting, Employer would have had the opportunity to offer accommodations to address Claimant's medical problems. But Claimant did not do so, choosing instead to give only personal reasons for his decision to quit his position. As such, Claimant prevented Employer from making an offer of accommodation based on Claimant's health problems. Therefore, Claimant did not meet his burden of proving that he had cause of a necessitous and compelling nature to justify his voluntarily leaving his employment under Section 402(b) of the UC Law. Wheelock Hatchery, Inc., 648 A.2d at 107; Ridley School District, 637 A.2d at 752.

Accordingly, we affirm the Board's Order.

_____
**RENÉE COHN JUBELIRER, Judge**

9

**IN THE COMMONWEALTH COURT OF PENNSYLVANIA**

Kenneth H. Adley,            :
                                                 :
                  Petitioner      :
                                               :
            v.                   :   No. 2331 C.D. 2014
                                               :
Unemployment Compensation Board   :
of Review,                     :
                                             :
                 Respondent   :

# O R D E R

**NOW**, July 31, 2015, the Order of the Unemployment Compensation Board of Review, entered in the above-captioned matter, is hereby **AFFIRMED**.

 

_____
**RENÉE COHN JUBELIRER, Judge**